UNITED STATES of America,
Appellant,

v.

Howard PAST, Executor of the Estate of
Edna C. Rosedale Ogg, Deceased,
Appellee.

No. 19225.

United States Court of Appeals
Ninth Circuit.
May 10, 1965.

Ely, Circuit Judge, dissented.

4. See also Crouse v. United States, 137 F.Supp. 47, 49 (D.Del.1955).

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robt. N. Anderson, Loring W. Post, Attys., Dept. of Justice, Washington, D. C., Thomas R. Sheridan, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Carl A. Stutsman, Jr., Stanley E. Tobin, Jack R. White, Hill, Farrer & Burrill, Los Angeles, Cal., for appellee.

Before CHAMBERS, HAMLIN and ELY, Circuit Judges.

HAMLIN, Circuit Judge.

Appellee is the executor of the estate of Edna C. Rosedale Ogg, deceased, who died December 25, 1956. Appellee filed an action in the District Court for the Southern District of California for the return of federal estate taxes in the total sum of $126,505.16 ($108,817.62 being principal and $17,687.54 being interest) theretofore paid by appellee in said estate following the assessment of a deficiency in estate taxes in the above amount. The district court rendered a judgment in favor of appellee in the full amount and appellant filed a timely appeal. The district court had jurisdiction under 28 U.S.C. § 1346. This court has jurisdiction under 28 U.S.C. § 1291. The facts as shown by the record and the findings of the district court are set out below. The decedent and Harry E. Rosedale were married for twenty-five years. In 1954, because of marital difficulties, complicated by the fact that decedent was addicted to alcohol, each employed independent legal counsel for the purpose of negotiating a property settlement. All of the property owned by the Rosedales was held as community property in which under California law each was an equal owner. For many years prior to 1954 decedent and her husband Harry obtained most of their income from a nursery business developed and managed by Harry. Decedent took no active part in the operation of the business. The principal assets of the community consisted of the common stock in two wholly-owned corporations, the Monrovia Nursery Company and Rosedale's Nurseries, Inc. In addition, the Rosedales owned real property referred to as "Huntington Drive property," upon which Rosedale's Nurseries conducted its business; a private residence; numerous insurance policies; furnishings; personal effects; and cash. Decedent and Harry had three children of their marriage, the youngest being a boy of five years.

Certain findings of fact of the district court provided *inter alia* as follows:

"10. Decedent's husband wanted majority control of the two corporations for himself, and desired that a substantial portion of their community property be preserved for their children. He did not wish that the decedent be permitted to have any part of their valuable community assets outright, particularly the business assets, because of her alcoholic condition; but he did desire that she be provided with an assured comfortable income.

\* \* \* \* \* \* \*

"12. On December 17, 1954, after extensive negotiations, a property settlement involving a number of interrelated documents was agreed to. They included a property settlement

agreement, a supplemental property settlement agreement, a declaration of trust, a lease and assignment of lease, a guarantee of said lease, and various deeds. * * *

"13. Under the terms of the property settlement agreement, the decedent's husband received free from any claims by decedent, 55% of the stock he and decedent owned in Monrovia Nursery Company and Rosedale's Nurseries, Inc., plus various items of miscellaneous personal property of approximately $3,000.00 in value. The property settlement agreement further provided that an irrevocable spendthrift trust was to be created by the parties concurrently therewith, to which the parties would convey the remaining 45% of the stock they owned in the two corporations, along with the Huntington Drive property and the residence. Decedent would receive the income for life from such trust, but the property itself would ultimately go to the children. She also received from the property settlement the right to use the residence for her life, and various items of personal property valued at $20,000.-00 plus $1,000.00 in cash.

"14. A clean-up fund was also created by said property settlement agreement, whereby all of the insurance policies owned by the parties were converted into cash, which, along with some other funds, was used to satisfy certain of their obligations, except for the $1,000.00 which went to the decedent. The total amount of such clean-up fund, less the $1,000.00 that went to the decedent was $45,880.34.

"15. Under the terms of the supplement and amendment to the property settlement agreement, the salaries which the decedent's husband was thereafter permitted to receive from the two corporations were limited to an aggregate of $60,000.00 during any one calendar year, unless 45% of any excess over such amount was paid to the decedent.

"16. Concurrently with the execution of the property settlement agreement, and as part of the division of property thereunder, both the decedent and her husband executed a declaration of trust which created the irrevocable trust referred to in the property settlement agreement. Said declaration transferred to said trust 45% of the stock owned by decedent and her husband in the two corporations, the Huntington Drive property and the residence. Under the terms of the trust, the decedent received all of the income for life with the remainder to the children. The trust was irrevocable and was equipped with spendthrift provisions. Decedent had no rights therein except the right to the income for life and the right to use the residence. The trust was accepted by decedent's attorneys, who were named as trustees.

"17. As a means of providing the desired assured income to the decedent, a lease and assignment of lease were made in conjunction with the property settlement. As a result, Rosedale's Nurseries, Inc. became obligated to pay a net rental income for the use of the Huntington Drive property in the amount of $20,000.00 per year for at least 20 years. The payment of such rental was further guaranteed by Monrovia Nursery Company, thus committing the assets of both corporations to the payment of a substantial fixed income to the decedent. The amount of rental fixed by the lease was believed by counsel for both spouses to be, and was in fact, in excess of the fair rental value for the Huntington Drive property, and was agreed to only after extensive negotiations.

\* \* \* \* \* \*

"19. It was intended by both decedent and her husband and their respective counsel that all of the prop-

erty transferred to the aforesaid trust was owned by both spouses equally at the time it was transferred, and that the transfer was a joint transfer by both decedent and her husband. All of said property transferred to said trust was in fact owned equally by the decedent and her husband, and the transfer was in fact a joint one in which each transferred the one-half which he or she owned. The transfers were an integral part of a single larger transaction, to wit, a property settlement.

\* \* \* \* \* \*

"24. The total value of all community property owned by the decedent and her husband at the time of the property settlement was $848,746.-08. Of that amount, the decedent's husband received property valued at $293,887.74; the decedent received outright property valued at $21,000.-00, in addition to the valuable life estate in the trust; the trust received property valued at $487,976.-00; and the clean-up fund received $45,880.34.

"25. As of December 17, 1954, the decedent was 44 years of age, and in good health, other than for her addiction to alcohol. Decedent's life expectancy at said date was 28 years, 8 months. Her subsequent death was caused by murder." [1]

On March 8, 1955, an interlocutory decree of divorce was granted to decedent and her husband, incorporating therein the property settlement agreement, and a final decree of divorce was granted March 13, 1956. Decedent remarried after the final decree and on December 25, 1956, was murdered by her then husband.

Harry died August 15, 1956.

In assessing a deficiency in decedent's estate tax, the government contended that the entire corpus of the trust at decedent's death valued at $642,788.66 should be included in decedents' estate, relying on 26 U.S.C. § 2036.

Section 2036 provides in part as follows:

"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

26 U.S.C. § 2043 provides in part:

"Transfers for insufficient consideration

"(a) In general.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in

---

1. The values of the various properties at the time of the property settlement December 17, 1954, was found by the district court to be:

| | | |
|---|---|---:|
| 1. | 500 shares Monrovia stock at $989 per share | $494,500 |
| | (55% equals $271,975; 45% equals $222,500) | |
| 2. | 101 shares Rosedale Nurseries at $340 per share | 34,340 |
| | (55% equals $18,887; 45% equals $15,453) | |
| 3. | Huntington Drive property | 225,000 |
| 4. | Residence | 25,000 |

money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent. * * * "

 The district court found: "The entire property settlement was an effort by the decedent and her husband to settle their marital and business relationships. It was a bona fide arms-length bargained-for transaction." On the basis of this finding the district court held:

"The transfer of property in trust by decedent * * * was, as a matter of law, made for an adequate and full consideration in money or money's worth, within the meaning of § 2036 of the Internal Revenue Code * * *."

Therefore, the district court concluded that no part of the decedent's transfer to the trust was a transfer subject to section 2036. In support of its decision, the district court cited Estate of Byron S. McCoy, Sr., 20 T.C.Memo. 224 (1961). There, the husband and wife entered into a property settlement agreement incident to a divorce. Pursuant to the agreement, both spouses received life estates in separate trusts made up of property which had previously been jointly owned, with the remainder going to their children. The wife also relinquished her stock ownership in the family corporations and in certain other jointly owned property. Without mentioning the relative values of the properties received by the spouses, the tax court held that the transfers were bona fide sales for an adequate and full consideration for estate tax purposes. Therefore, upon the death of the husband, the value of the trust in which he possessed a life estate by reason of the property settlement was held not includable in his gross estate under section 2036. The tax court seemed to assume that because the transfers were part of an arm's length transaction settling both the marital and business affairs of the spouses that, as a matter of law, there was sufficient consideration for the purposes of section 2036. We do not agree.[2] The fact alone that the transfer into the trust was part of a property settlement agreement incident to a divorce is not sufficient to make the transfer of the decedent one for an adequate and full consideration within the meaning of section 2036. The value of what the decedent received under the trust must be measured against the value of the property she transferred to the trust. See Estate of Gregory, 39 T.C. 1012 (1963).

 The district court found that the decedent and her husband both joined in

2. Absent donative intent, a transfer made in a bona fide bargained-for transaction is deemed to be for an adequate and full consideration for the purposes of the gift tax provisions of the Code. E.g., Rosenthal v. Commissioner of Internal Revenue, 205 F.2d 505 (2d Cir. 1953); Treasury Reg. § 25.2512-8. Appellee maintains that the same principle applies equally for estate tax purposes. See Estate of Friedman, 40 T.C. 714 (1963). In Estate of Friedman, a decedent, within three years of her death, transferred certain property to her stepchildren in compromise of a dispute. The decedent retained a life estate in the property. The Commissioner argued that the taxpayer was liable for a gift tax, or, in the alternative, that the property should be included in her gross estate pursuant to section 2035 or section 2036. Relying on previous decisions holding that a compromise of a disputed claim constituted sufficient consideration for the purposes of section 2512 of the gift tax, the court held that the taxpayer was not liable for estate taxes under either section 2035 or section 2036. The rationale of the decision was that the test of adequate consideration for the purposes of section 2036 of the estate tax was that same test used in gift tax cases. We do not agree. Carried to its logical conclusion, the rationale of the Friedman and McCoy cases would nullify the effect of section 2036 every time a life estate was retained as a result of a property settlement incident to a divorce. Moreover, the gift tax cases are readily distinguishable in that here the transaction was not free from donative intent.

the transfer to the trust and that each contributed one-half of the property to the trust. This finding cannot be said to be clearly erroneous, and we accept it as a starting point in our calculations.

The property placed in the trust and its value was:

| | |
|---|---|
| (1) Huntington Drive property | $225,000 |
| (2) Residence | 25,000 |
| (3) 45% of the stock of the Monrovia and Rosedale companies | 237,978 |
| Total | $487,978 |

Since each of the parties contributed one-half of the property to the trust, the value of the property contributed by the decedent thereto was $243,989.

■■■■ The trust agreement provided that the decedent received a life estate in all of the property placed in trust. Her life expectancy at the time of the creation of the trust was 28 years 8 months. According to the computations prescribed by the government regulations, the value of the life estate to the decedent at the time of its creation was $286,691.95.[3] The consideration received by the decedent was equal to the value of her right to receive the income for life from her husband's contribution, or, $143,345.97, —one-half the value of the life estate in the entire trust corpus.[4]

■■ From the above facts it appears that the decedent contributed $243,989.00 to the trust (one-half of the total property contributed to the trust). She re-

3. See Treasury Reg. § 20.2031–7. The district court, without naming any exact amount, found that the value received by the decedent was "substantially greater than the figure of $286,691.95." The court reached this conclusion by reason of certain agreements contained in the trust agreement whereby the Rosedale Nurseries, who occupied the Huntington Drive property, agreed to pay as rental therefor the sum of $20,000 per year for a period of at least twenty years. The court found that the fair rental for the Huntington Drive property was $1,125 per month. The agreement also provided that the payment of the $20,000 per year was also guaranteed by the Monrovia Nursery Company,—thus, as found by the court, "Committing the assets of both corporations to the payment of a substantial fixed income to the decedent. The amount of rental fixed by the lease was believed by counsel for both spouses to be, and was in fact, in excess of the fair rental value for the Huntington Drive property and was agreed to only after extensive negotiations." The government complains of the court's finding that the life estate was greater than indicated in the Regulations, and contends that the court erred in departing from the Regulations in this instance. We agree. Although the value of the Huntington Drive property, as augmented by the special lease agreement, was greater than that provided for by the Regulations, it is clear that when Rosedale Nurseries, Ltd., had agreed to pay more than the fair market rental for the Huntington Drive property and the Monrovia

Nurseries guaranteed this higher payment, this naturally would have the effect of reducing the market value of the stock of these two corporations. The amount of such reduction was not and could not be definitely determined. The Regulations should not be departed from where the alleged increase in value can not be ascertained with a substantial degree of certainty. See Estate of Green, 22 T.C. 728, 732 (1954).

4. Estate of Gregory, 39 T.C. 1012 (1963). The taxpayer urges that the commuted value of the life estate in the entire corpus should be treated as consideration passing to the decedent for the purposes of section 2036. In support of its contention, the taxpayer would have us draw an analogy from the gift tax area. For gift tax purposes, where a trust is created from community property contributed by both spouses and the wife receives income for life from the entire trust corpus, the amount of her taxable gift is calculated by subtracting the value of the entire life estate from the value of her share of community property transferred into the trust. See, e. g., Commissioner of Internal Revenue v. Siegel, 250 F.2d 339 (9th Cir. 1957). The gift tax situation is readily distinguishable. There, the retained life estate is not treated as consideration. Rather, since the donor is giving only the remainder interest, it is necessary to reduce the value of the donor's transfer by the value of the retained life estate in order to determine the value of the gift. See Estate of Gregory, 39 T.C. 1012, 1016–1017 (1963).

14

ceived from the trust a life estate worth $286,691.95 (one-half of which came from decedent's contribution and one-half from her husband's contribution). Since the decedent's contribution to the trust was greater than the consideration she received in return (the difference between $243,989 and $143,346, or $100,643), she did not receive adequate and full consideration for the purposes of section 2036.

In the alternative, the district court found:

"Since the decedent received consideration in money or money's worth for her transfer to the trust, pursuant to the property settlement, even if such consideration had not been adequate and full, her estate would nevertheless be entitled to a credit under section 2043(a) of the Internal Revenue Code to the extent of the consideration she actually received, which would be deducted from the value of any property that might be includable in her gross estate under section 2036."

The district court then held:

"A recomputation of the decedent's taxable estate would be required *in accordance with the foregoing Findings of Fact,* taking into account the property of the corpus actually transferred by decedent and the credit for consideration received along with all other allowable deductions, exemptions and credits. Such a recomputation would still result in no Federal Estate Tax or interest due." (Emphasis added.)

Since the decedent's transfer into the trust was subject to section 2036, we agree with the district court that her gross estate would include one-half of the value of the trust corpus at her death[5] ($321,394.43) reduced by the credit allowed by section 2043(a) of the Internal Revenue Code for the consideration she received.[6] We have found that the consideration received by the decedent was equal to the value of her right to receive the income for life from her husband's contribution to the trust. Under the treasury regulations[7] the consideration received by the decedent was $143,345.97.[8]

Therefore, under the above reasoning and calculations, the amount to be included in decedent's gross estate would be the difference between the value of one-half of the trust corpus at the date of her death, $321,394.43 (one-half of $642,788.66) and the amount of consideration she received therefor, $143,345.97 (one-half of the value of the trust estate at its creation, i. e., one-half of $286,691.95), or the sum of $178,048.46. From this gross estate, of course, there should be deducted all allowable exemptions and

---

5. The property transferred is to be valued at the date of decedent's death. See Vardell's Estate v. Commissioner of Internal Revenue, 307 F.2d 688, 693 (5th Cir. 1962). At the date of decedent's death, the value of the entire trust corpus was stipulated to be $642,788.66. One-half, or $321,394.43, is includable in decedent's gross estate under section 2032.

6. Estate of Gregory, 39 T.C. 1012 (1963). The consideration received by the decedent is to be valued at the time of the transfer. Vardell's Estate v. Commissioner of Internal Revenue, supra, 307 F.2d at 693.

7. It is not clear whether the district court based its holding on values other than those prescribed by the Treasury Regulations. The district court found as follows:

"The value, as shown by the Internal Revenue Regulations, of the life estate which decedent acquired in the one-half of the transfer to the trust that was attributable to her husband was $143,345.02. This constituted consideration in money or money's worth received by decedent for her transfer to said trust within the meaning of § 2043(a). *The actual value of the consideration received by decedent for her transfer within the meaning of § 2043 (a) was even greater, however, by reason of the extra income from the lease arrangement.*" (Emphasis added).

See footnote 3, supra.

8. See Treasury Regulation § 20.2031-7.

deductions, including reasonable attorney fees. Also to be considered is the allowance, if any, of a gift tax credit.

The case is remanded to the district court for recalculation of taxes, if any, in accordance with this opinion.

ELY, Circuit Judge (dissenting).

I agree with the majority that the district court erred in its judgment that decedent's transfer of property to the trust was made for adequate and full consideration within the meaning of 26 U.S.C. § 2036. I disagree, however, with the majority's acceptance of the district court's finding that each spouse "contributed one-half of the property to the trust." Of itself, the finding may not be clearly erroneous, but the transactions incident to the separation and divorce of the spouses and their adjustment of their property dispute should be viewed as a whole. It should be the substance of the total result which should control our determination here. For this proposition, the authorities are numerous. Greene v. United States, 237 F.2d 848, 852 (7th Cir. 1956), First National Bank of Shreveport v. United States, 342 F.2d 415 (5th Cir. 1965), Estate of Gregory, 39 T.C. 1012, 1018 (1963). Moreover, in the court below, the burden of proof rested upon the appellee. Germantown Trust Co. v. Lederer, 263 F. 672 (3rd Cir. 1920), Mayes v. United States Trust Co., 280 F. 25 (6th Cir. 1922), Estate of Green, 22 T.C. 728, 732 (1954).

By the property settlement agreement which attended the unfortunate dispute, there was set aside to the husband, as his share of the previously existing community property in which each spouse was the owner of an undivided interest of fifty per cent, property interests valued, at the time of the agreement and of the creation of the trust, at $293,888.[1] This property included fifty-five per cent of the outstanding shares of two corporations. The majority opinion seems to ignore the fact that one-half of that

which the husband received had previously been owned by the wife, and, moreover, no importance is attributed to the probability that control of the corporations represented a valuable acquisition by the husband and the fact that under the agreement there could be no protest by the holder of the forty-five per cent of stock in the two corporations set aside to the wife's benefit of the husband's right to receive a salary of $60,000 per year.

I object to the method employed by the majority in its computations, believing that in this case, an injustice is worked upon the Government, and in other circumstances, the application of the majority's method could work injustice upon the taxpayer.

There are three possible approaches which could be adopted in the case before us. First, it could be held that the total value of the corpus of the trust is includible in the decedent's estate for the assessment of federal estate taxes. This approach, which I prefer, could have been taken had the trial court found as a fact, as it well might have done, that the original source of the whole trust corpus was the property, or a part of the property, which had been set aside to the wife as her share of the community assets. The wife's participation in the creation of the trust was voluntary, and whether, in the division, she received more or less than one-half of the community property would ordinarily be immaterial. Furthermore, the mere fact that the husband joined and cooperated in making direct transfers to the trust under the requirement of the property division agreement, would not, of itself, operate to bring about a result different from one which would be proper if there had been a direct transfer to the wife without restriction and her subsequent creation of the trust without the necessary joinder of her husband. As indicated, however, respect for the trial court's findings, at least insofar as they find that a part of the property of the original trust corpus

1. Fractions of dollars are omitted in the figure to which this note is a reference as well as in all other money sums which are mentioned herein.

was property which was contributed by the husband, renders this first possible approach improper.

Second, we see the approach or method adopted by the majority which, in brief, begins with the justified acceptance of $487,978 as the value of the property placed in the trust at the time of the creation of the trust. Then, accepting one of the district court's findings, incomplete of itself, the majority divides this amount in half and determines that the decedent, in the beginning, contributed property of the value of $243,989. Following the pattern of this equal division which I view as improper, the majority determines that fifty per cent of the value of the trust corpus, as of the date of decedent's death, is the amount which should finally be taken as decedent's contribution.

My disagreement with the majority's analysis leads to consideration of a third approach which accepts the fact that *some* contribution to the trust was made by the husband. It is more equitable than that taken by the majority, and, under the facts of this case, it is supported by existing authority. This is an approach which recognizes the total economic effect of the whole transaction and calls for more precise examination, based upon all of the district court's findings, of the source of the corpus. As I see it, the sources are made clear by the following recapitulation:

| | |
|---|---|
| Total value of community property at time of property settlement agreement | $848,746 |
| Less clean-up fund for payment of expenses | 45,880 |
| Net value of community property at time of property settlement agreement | $802,866 |

### CONTRIBUTION TO TRUST BY HUSBAND

| | |
|---|---|
| Husband's one-half of net community property | $401,433 |
| Less value of property set apart to husband (disregarding value of control of corporations and right to receive fixed salary) | 293,888 |
| Value of husband's contribution to trust | $107,545 |

### CONTRIBUTION TO TRUST BY DECEDENT WIFE

| | |
|---|---|
| Decedent wife's one-half of net value of community property | $401,433 |
| Less value of property set apart to wife without restriction | 21,000 |
| Net contribution of decedent wife to trust | $380,433 |

Adding the wife's and husband's contribution to the trust, we arrive at a total contribution of $487,978. Now, turning to the value of the trust corpus at the time of the wife's death, we see that it was $642,789. I would arrive at the value of the decedent's contribution by applying a proportionate ratio. At the time of the creation of the trust, she contributed $380,433 of a total value of $487,976, and applying the proportion of her contribution as of the time of the creation of the trust to the value of the trust at the date of her death, namely, $642,789, I would hold that she contributed $501,125 and not only $321,394, as determined by the majority.

Since, in making her original contribution of $380,433 in exchange for only a life estate in $107,545 contributed by the husband, she obviously did not receive "adequate and full consideration" so that there is exemption under Section 2036, we turn to Section 2043(a) to determine the amount which should be included in the federally taxable gross estate. Un-

der this section, this amount should be the value of that which the decedent contributed, namely, $501,125, less "the value of the consideration received therefor by the decedent."

There is a problem as to whether the consideration received by the wife should be valued as of the time of transfer to the trust or at the time of decedent's death. The pertinent statutory language is not clear. Section 2043(a) clearly provides that the property which is transferred is to be evaluated as of the date of death. It can be urged that the section seems to provide that the consideration for the transfer is to be valued at the time of the transfer, and in its Footnote #6, the majority, citing Vardell's Estate v. Commissioner of Internal Revenue, 307 F.2d 688, 693 (5th Cir. 1962), holds that the time of transfer is the proper time for evaluation. I submit that Vardell's Estate v. Commissioner of Internal Revenue does not, upon careful analysis, stand for that proposition. There is language to that effect found in the opinion at page 693, but the language is not strictly applied. Adopting the date of transfer as the proper date for the evaluation of the consideration received by the decedent has been justly criticized as leading to extremely harsh and unjust results either to the Government or to the taxpayer when there has been substantial depreciation or appreciation in value as of the date of death. Lowndes and Kramer, Federal Estate and Gift Taxation, 298 (2d ed. 1962), 70 Harv.L.Rev. 1486 (1957), cf. Helvering v. United States Trust Co., 111 F.2d 576 (2d Cir. 1940). In the absence of clear and express statutory mandate, I would adopt an approach which would seem to be fair and just to the Government and to the taxpayer in all cases. Under it, I would interpret "value of the consideration", as provided in Section 2043(a), as the proportion of the value of the corpus at death which is attributable to the consideration received by decedent.[2] The life estate which decedent retained in the property contributed by her cannot be taken as consideration, and the majority opinion so recognizes. We must then ascertain the ratio of the consideration received by the decedent to the contribution made by the decedent to ascertain the value of the corpus at death which is attributable to the consideration received. Utilizing Treasury Regulations (Treasury Regulations on Estate Tax, 1954 Code, § 20.2031–7) in computing the "value of the consideration" we have the following:

Value of decedent's life estate interest in property contributed to trust by husband ($107,545 x .58751) ............... $ 63,182
Value of children's remainder interest in property contributed to trust by decedent ($380,433 x .41249) ............... $156,925

Thus, under Section 2043(a) we establish an applicable ratio of 40.262 per cent. This percentage of $501,125, the value of the decedent's contribution to the trust as of the date of her death, is $201,763. This amount, in my judgment, should be our determination as to the "value of the consideration" received by the wife in exchange for that which is properly recognizable as a transfer by her.[3] When this amount is subtracted from the fair market value of the wife's

2. The appellee concedes that this interpretation of "value of the consideration" is fairly and justly proper if we are to hold, as we have, that Section 2043(a) and not Section 2036 is applicable. The majority opinion, while favorable to appellee in its result, adopts, in its overall computation, an approach which neither the Government nor the appellee has advanced.

3. I agree with the conclusion of the majority opinion, expressed in its Footnote #3, that a lease arrangement under which the trust was to receive a substantial annual rental of real property conveyed to the trust and leased to the corporations, should not be considered as additional consideration above the accepted standards contemplated by Treas-

contribution as of the date of death, namely, $501,125, there results a balance of $299,362. This is the amount of the trust corpus which I believe should be included in the decedent's gross estate for federal estate tax purposes, and it is significantly greater than the sum of $178,048, the figure reached by the majority. Of course, there should be deducted therefrom all proper exemptions and deductions which are allowed by law, including reasonable attorney's fees. Moreover, there should be considered in appropriate recomputation, the allowance of credit for gift taxes paid by the decedent at the time of the creation of the trust.

ury Regulations, Section 20.2031–7. The controlling interest in the two corporations received by the husband, together with his right to receive a fixed salary, would, in my judgment, equal or exceed any value which might be fixed upon the lease arrangement.