In re **ESTATE** of Harold **HARTSHORNE**, Deceased.

Harold **HARTSHORNE**, Jr., and James M. Hartshorne, Executors, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 18, Docket 32199.

United States Court of Appeals Second Circuit.

Argued Sept. 19, 1968.

Decided Oct. 28, 1968.

Francis J. Rogers, New York City, for petitioners.

Marian Halley, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks and Loring W. Post, Washington, D. C., on the brief), for respondent.

Before WATERMAN, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Harold Hartshorne died on February 15, 1961, leaving a will providing that one-third of his residuary estate (after certain exclusions and less $100,000) be placed in trust, the income to be paid to his former wife Mary during her lifetime and the principal to be paid to their three adult children upon her death. The provisions for Mary and the adult children were made pursuant to a settlement agreement ratified and adopted as part of a Nevada divorce decree in 1942.

In the federal estate tax return, the decedent's executors claimed that the entire amount of the testamentary trust was deductible from the gross estate as a debt of the estate. The Commissioner of Internal Revenue allowed the deduction of the value of Mary's life estate, but disallowed the value of the adult children's remainder interest.

The Tax Court, C. Rogers Arundell, J., held that the value of the remainder interest was not deductible under section 2053(a) (3) of the Internal Revenue

Code of 1954,[1] and determined a deficiency of $176,088.90 against the estate. The Tax Court held that "petitioners have failed to prove that there was adequate and full consideration in money or money's worth for the remainder interest of the testamentary trust."

The executors petition for review of the Tax Court decision pursuant to section 7482 of the Internal Revenue Code of 1954. We find no error and deny the petition for review.

The only question raised by this case is whether the value of the remainder interest is deductible from decedent's gross estate as a claim against the estate within the provisions of section 2053 of the Internal Revenue Code of 1954. Section 2053(c) (1) (A) allows a deduction for claims "founded on a promise or agreement" to the extent "they were contracted bona fide for adequate and full consideration in money or money's worth."

■■ If the disputed agreement provided simply for the settlement of marital property rights and/or the maintenance of *minor* children, it is clear that any indebtedness arising out of such an agreement would be deductible from

the gross estate. Harris v. Commissioner of Internal Revenue, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950); Rev. Rul. 60–160 (1960–1 Cum.Bull. 734). However, it is firmly established that the *Harris* rationale (i. e., that a claim arising out of a court-approved divorce settlement will be deemed to be supported by "adequate and full consideration") does not apply to transfers to *adult children*. Rosenthal v. Commissioner of Internal Revenue, 205 F.2d 505 (2d Cir. 1953); Chemical Bank New York Trust Co. v. United States, 249 F.Supp. 450 (S.D.N.Y.1966); Estate of Keller v. Commissioner, 44 T.C. 851 (1965).

Since petitioners do not challenge the holding of Rosenthal v. Commissioner of Internal Revenue, supra, and those decisions which follow it, the only question we have to decide is whether "adequate and full consideration in money or money's worth" was given in exchange for the promise by decedent to create a testamentary trust.

■■ We assume for purposes of this appeal that an agreement to make a bequest may sometimes be a "claim" within the meaning of section 2053.[2] In

---

1. Sec. 2053. Expenses, Indebtedness, and Taxes.
   (a) *General Rule.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
   \*     \*     \*     \*     \*
   (3) for claims against the estate, and
   \*     \*     \*     \*     \*
   (c) *Limitations*—
   (1) *Limitations applicable to subsections (a) and (b).*—
   (A) *Consideration for Claims.*—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth;
   \* \* \*
   (26 U.S.C.1964 ed. Sec. 2053)

2. The Commissioner takes the position that an agreement to make a bequest to

one's own children can never be a "claim against the estate" within the meaning of section 2053 because the decedent has simply agreed to make a testamentary disposition to persons who are "natural objects of his bounty" and who would inherit anyway. According to the Commissioner, these persons have "an interest in the estate rather than a claim against it for federal estate tax purposes." See 4 Mertens, Law of Federal Gift and Estate Taxation ¶ 26.40, at 167 (1959).

We agree that inheritance rights alone are not deductible claims under section 2053. To hold the other way would be to open a large loophole in the estate tax by encouraging taxpayers to contract with their wives and children for whatever inheritance rights they would otherwise have in the estate and thereby convert nondeductible claims into deductible contractual claims against the estate. Cf. C. I. R. v. Estate of Watson, 216 F.2d 941 (2d Cir. 1954). Under exceptional circumstances, however, it may be that a

the Tax Court, Judge Arundell suggested that the value of Mary's life estate was roughly equivalent to the commuted value of the alimony payments she would have received under a 1938 separation decree, and therefore that the "claim" of the adult children was founded on a promise unsupported by consideration. Under Rev.Rul. 60–160, Mary's life estate is deductible from decedent's gross estate without regard either to its value in dollars or the adequacy of the consideration, and therefore it was unnecessary for Judge Arundell to assign a dollar value to the rights surrendered by Mary.[3]

The petitioners, however, do not challenge this finding by Judge Arundell, and they apparently concede that Mary gave no consideration for the remainder interest. Indeed, their whole argument is based on the fact that Mary gave

"zero" consideration for the children's remainder interest. They argue that "zero" consideration is "adequate and full consideration" for purposes of section 2053 if the remainder interest which decedent was promising had "zero" value *at the time of the bargain*. This they proceed to demonstrate by showing that the value of the remainder interest was *minus* $8,383.90, which they generously round off to zero. Thus, they claim they satisfy the requirements for deduction under section 2053(c). The bizarre contention we reject.

Even if, as the petitioners insist, the relevant time for determining the adequacy of the consideration is "at the time of the exchange" and not, as the Commissioner argues, at the time of decedent's death, petitioners are mistaken in their view that the promise was worth nothing in 1942.[4]

claim by someone who might otherwise inherit from the decedent should be deductible under section 2053. If the claim is not simply a subterfuge for a nondeductible legacy, if the claim is supported by "adequate and full consideration," and if the consideration is a non-zero sum which augmented the decedent's estate, then it would seem that the deduction should be allowed. Whether or not a particular claim is deductible, then, will depend on the facts in each case.

3. What Mary surrendered were support and alimony payments to which she was entitled under a New York separation decree. By its terms, Mary was to receive monthly payments of $800 for the rest of her life. Unlike the agreement ratified in the Nevada divorce decree, these payments were not to be terminated by remarriage nor decreased when any of the children reached majority. In addition, the payments were subject to modification on application of either of the parties, and in 1941 Mary's alimony payments were increased to $1,000 a month.

4. That the relevant time for valuing the consideration should be at the time of exchange is suggested by United States v. Past, 347 F.2d 7 (9th Cir. 1965), where the decedent and her husband both transferred property to a trust pursuant to a property settlement agreement. In concluding that decedent's contribution to the trust was greater than the consideration received in return, and therefore

that the excess should be included in decedent's estate for purposes of computing the estate tax owed, the Ninth Circuit looked at the value of the property transferred *at the time of transfer* to determine whether the life estate which decedent retained was greater than her contribution to the trust. In a footnote, the court said that the consideration received by decedent "is to be valued at the time of the transfer," 347 F.2d at 14, n. 6, citing Vardell's Estate v. Commissioner of Internal Revenue, 307 F.2d 688 (5th Cir. 1962).

Admittedly, both *Past* and *Vardell's Estate* involved *inter vivos* transfers which failed for inadequate consideration, and were therefore decided under section 2043 of the Internal Revenue Code. Nonetheless, sections 2043 and 2053 are sufficiently similar in purpose and language so that we may at least assume for the purpose of this case, that the relevant time for determining the value of consideration is at the time of exchange. Both sections are aimed at preventing the depletion of the estate for estate tax purposes. Both sections operate by imposing estate tax liability for transfers unsupported by "adequate and full consideration." One disallows claims for inadequate *inter vivos* transfers, while the other disregards certain post-death transfers for estate tax computation. Under section 2043, the amount includable in the gross estate for tax computation is the difference between the

■ Assuming that the relevant time is the time of exchange, and conceding that petitioners' arithmetic is correct, petitioners still are not entitled to deduct the value of the remainder interest from the gross estate. Despite the novelty of their argument, all that they have succeeded in showing is that the remainder interest (and indeed, the whole testamentary trust) had no value at the time the settlement agreement was negotiated. Since the trust was not to be set up until decedent died, the trust may have had no ascertainable value in 1942. This does not mean, however, that the *promise* to establish the trust had no value. Indeed, the fact that the promise was incorporated into a court-approved divorce decree would seem to indicate that the promise was not altogether without value.

■■ While the trust to be set up in the future may not have had any ascertainable present value in 1942, and while it may not have been possible to ascertain the precise value of Mary's life estate in 1942, it is enough for us to be able to say that the promise was not wholly worthless.[5]

The promise had large potential worth. Even in 1942 the decedent's estate was worth over $340,000 and could be expected to increase. If petitioners' argument were to prevail in such a situation a convenient loophole would be opened in the estate tax provisions whereby a testator could avoid the tax simply by promising to give the natural objects of his bounty something with a then zero value but with an enormous potential for increase.

Since the Tax Court found (and petitioners concede) that Mary gave no consideration for the children's rights, and since plainly decedent's promise was valuable to some extent at the time of the exchange, there was no "adequate and full consideration" for the promise. It follows, then, that the remainder interest is not deductible from the gross estate under section 2053(c), and the petition for review is denied.[6]

---

value of the property at death, valued as of the date of death, and the value of the consideration received by decedent, *valued as of the date of transfer.* Logically, it may well be that the result should be the same under section 2053.

5. The value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market. * * * [I]t depends largely on more or less certain prophecies of the future; and the value is no less real at that time if later the prophecy turns out false than when it

comes out true. * * * Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647 (1929), Holmes, J.

6. Moreover, we doubt whether the disputed transaction was in fact an exchange of equals, since the children received a promise with a large potential worth, while the decedent received nothing that could ever increase beyond its then zero worth. In any case, we should have difficulty in concluding that zero value is "adequate and full consideration *in money or money's worth.*"