T.C. Memo. 1998-309


UNITED STATES TAX COURT


ESTATE OF ETHEL M. CUMBER WILSON, DECEASED, ETHEL C. KELLY AND
DENNIS I. BELCHER, CO-EXECUTORS, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket No. 15559-96.                    Filed August 24, 1998.


    Dennis I. Belcher, Michele A.W. McKinnon, and John F.

Kelly, for petitioner.

    William Henck, for respondent.


MEMORANDUM OPINION


    RUWE, Judge:  Respondent determined a deficiency of

$1,225,296 in petitioner's Federal estate tax plus an accuracy-

related penalty under section 6662[1] in the amount of $202,811.

_____

    [1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect as of the date of decedent's
                                        (continued...)

The parties have by way of settlement or concession disposed of all but one of the issues raised in the notice of deficiency. The issue remaining for decision is whether petitioner is entitled to deduct claims against decedent's estate made by David and Daniel Griffith in the amounts that were ultimately paid to the claimants. This case was submitted fully stipulated.

## Background

Ethel M. Cumber Wilson (decedent) died a resident of Richmond, Virginia, on October 3, 1992. Decedent was a widow and was survived by her only child, Ethel C. Kelly (Mrs. Kelly). Decedent's will dated July 20, 1989, was probated in the Circuit Court of the City of Richmond. Under her will, decedent made specific cash bequests to certain individuals totaling $240,000, including a cash bequest of $100,000 to Daniel Griffith. She gave the balance of her estate to Mrs. Kelly. Decedent's will named Mrs. Kelly as executor and granted Mrs. Kelly the power to designate a coexecutor. Dennis I. Belcher of Richmond, Virginia, was named to serve as coexecutor.

During decedent's lifetime, David Griffith and Daniel Griffith assisted her in various personal and financial matters. David and Daniel were brothers. David assisted decedent from

---

[1](...continued)
death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1976 to 1984, and Daniel assisted decedent from 1984 until her death in 1992.  The Griffiths were not related by blood to decedent but were distant cousins of decedent's deceased husband. Decedent's husband died on June 22, 1943.

The services performed by the Griffiths included companionship, secretarial work, chauffeuring, reading to her, reviewing and paying bills, and taking her to medical and dental appointments.  The Griffiths were on call at all times to meet decedent's demands, which were substantial because she was of advanced age, in very poor health (she was blind and severe diabetes required amputation of her leg in 1989), and unable to take care of any of her affairs.  Both David and Daniel were employed full time elsewhere during the periods they assisted decedent.  David was employed by C&P Telephone Co. and worked a significant amount of overtime.  Daniel worked for Phillip Morris, but worked the 3 p.m. to 11 p.m. shift and worked for decedent in the mornings before going to work.

Decedent never had an investment adviser but had a stock broker who handled trades for her.  Decedent also informally sought the advice of her son-in-law, two stock brokers, and a trust officer.  Decedent kept her stock certificates in her own name and did not use a brokerage firm to hold her stock certificates.  Decedent employed other persons in her personal residence.

On December 30, 1993, David filed a lawsuit against decedent's estate claiming that in the fall of 1976 he and decedent had entered into a binding oral contract under which decedent agreed to provide in her will that David receive one-third of her estate in return for his agreement to provide personal and financial services to decedent until her death. David provided such personal and financial services to decedent from 1976 until 1984. In 1980, decedent executed a will in which decedent gave one-third of her estate to David. However, because of a dispute with David, decedent executed a new will in 1984 that eliminated David as a beneficiary.

Decedent's executors disputed the validity of David's claim and litigated the matter on behalf of decedent's estate. The litigation included extensive discovery and contested pretrial matters. Following 2 years of discovery and pretrial motions, a 2-day jury trial was held in the Circuit Court of the City of Richmond on January 11 and 12, 1995. The principal issues were the validity and amount of David's claim. Before submitting the matter to the jury, the court granted the executors' statute of frauds motion with respect to decedent's real property but not with respect to her personal property. Consequently, if the jury believed that David and decedent had an oral agreement, David would receive: (a) One-third of decedent's personal property (or one-third of approximately $4.5 million), and (b) an award based

on quantum meruit for the portion of his claim relating to decedent's real estate.

During jury deliberations, David and the executors reached an agreement, called a structured settlement, the terms of which depended in part on the jury verdict.

The jury determined that David and decedent had entered into a binding contract under which decedent agreed to give David one-third of her estate and in return David agreed to provide personal and financial services to decedent. The jury also determined the value of David's services performed under the contract to be worth $75,000 (without interest).

The jury found sufficient consideration to support the oral contract at the time of the alleged oral agreement. The jury's finding that the value of David's services was $75,000 did not limit David's recovery with respect to decedent's personal property, but would have been used as a basis to determine David's ultimate recovery with respect to the real estate. As a result of the jury's verdict in favor of David, he would have, but for the settlement agreement, received approximately $1.5 million plus $3,750 (the quantum meruit portion relating to decedent's real estate). Because the jury returned a verdict in favor of David, the structured settlement provided that David was entitled to receive $400,000 in full satisfaction of his claim against decedent's estate for services provided to decedent

during her life.  Pursuant to the settlement agreement, David recognized that the settlement payment he received was for services rendered and agreed to treat the settlement payment received as compensation.  As required by law for a payor of miscellaneous income, the executors furnished a Form 1099 to David.

On July 22, 1993, Daniel filed a lawsuit against decedent's estate claiming that in 1984 he and decedent had entered into a binding oral contract under which decedent agreed to provide by her will that Daniel receive one-third of her estate and that in return Daniel agreed to provide personal and financial services to decedent until her death.  Daniel provided such personal and financial services to decedent from 1984 until decedent's death in 1992.

The executors disputed the validity of Daniel's claim and litigated the matter on behalf of decedent's estate.  The litigation continued for more than 2 years and included extensive discovery and contested pretrial matters.  After 2 years of discovery and other litigation matters, the executors and Daniel agreed to submit Daniel's claim to mediation.  Retired Chief Judge Robert R. Harris, Sr., of the Circuit Court of the City of Richmond, acted as mediator between the parties.  As a result of the mediation, the executors agreed to pay Daniel $550,000 (in addition to the $100,000 specific bequest provided to Daniel in

decedent's will) in full satisfaction of his claim against decedent's estate. Pursuant to the settlement agreement, Daniel recognized that the settlement payment he received was for services rendered and agreed to treat the settlement payment received as compensation. As required by law for a payor of miscellaneous income, the executors furnished a Form 1099 to Daniel.

The estate's respective payments of $400,000 to David and $550,000 to Daniel were triggered solely by the results of the judicial and mediation proceedings described above and for no other reason.

## Discussion

The issue for decision is whether decedent's estate may deduct the claims of David and Daniel Griffith in the amounts paid to them pursuant to the settlement of their claims.[2]

Section 2053 allows an estate tax deduction for claims against the estate that are allowable by the laws of the jurisdiction in which the estate is being administered. Section 2053 seeks to distinguish between claims based upon obligations

---

[2]Respondent does not appear to be contesting the deductibility of $75,000 of each of the payments that was made to David and Daniel. Respondent argues that the deductions are limited to $75,000 of each payment, because that was the value that the jury placed on the services that were actually rendered by David. Respondent argues that Daniel's services should be given a similar value.

of the decedent or of the estate, as compared to bequests and legacies. <u>First Natl. Bank of Amarillo v. United States</u>, 422 F.2d 1385, 1386 (10th Cir. 1970). To be deductible, the claim must represent a personal obligation of the decedent at the time of death. Section 2053(c)(1)(A) places a limitation on the type of claims at issue in this case by providing:

> (A) Consideration for claims.--The deduction allowed by this section in the case of claims against the estate, * * * shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * *

Section 2053(c)(1)(A) is mirrored by the provisions of section 20.2053-4, Estate Tax Regs.

The purpose of the "adequate and full consideration" requirement is to prevent the depletion of the estate by the use of agreements which would ultimately serve to avoid the estate tax. <u>Bank of New York v. United States</u>, 526 F.2d 1012, 1016 (3d Cir. 1975); see <u>Estate of Hartshorne v. Commissioner</u>, 402 F.2d 592, 594 n.2 (2d Cir. 1968); <u>Latty v. Commissioner</u>, 62 F.2d 952, 953-954 (6th Cir. 1933). Thus, claims based upon promises or agreements must be "contracted for a consideration which at the time either augmented the estate of the decedent, granted to him some right or privilege he did not possess before, or operated to discharge a then existing claim". <u>Latty v. Commissioner</u>, <u>supra</u> at 954. Furthermore, under the statute, some consideration is not

enough; it must be "adequate and full".  Sec. 2053(c)(1)(A).  Our task is to determine whether the underlying claims that resulted in the settlement payments were based on bona fide agreements between decedent and David and Daniel Griffith for adequate and full consideration in money's worth.

David filed a lawsuit against the estate claiming that in 1976 he and decedent had entered into an oral contract, whereby decedent agreed to give him one-third of her estate in return for his promise to provide personal and financial services to decedent for her lifetime.  David provided such services from 1976 to 1984.  In 1980, decedent executed a will in which she gave one-third of her estate to David.  Decedent subsequently had a dispute with David, and in 1984 she executed a new will that eliminated David as a beneficiary.

David's claim that decedent had breached her contract was litigated, and a jury returned a verdict that would have awarded him more than $1.5 million.  However, during jury deliberations David and the executors of decedent's estate entered into a structured settlement agreement, the terms of which were, in part, dependent on the jury's verdict.  Pursuant to the verdict and the terms of the settlement agreement, the estate paid David $400,000 in full satisfaction of his claim.

Respondent would have us limit the deduction for David's claim to $75,000 because that was the jury's determination of the

value of the services that David actually performed for decedent from 1976 to 1984. The problem with respondent's position is that the consideration that David provided in return for decedent's promise was not the years of services that he actually provided; rather, it was his 1976 promise obligating him to provide services to decedent for her lifetime. The date on which the contract (agreement) was made is the proper date on which to value the consideration. Estate of Fenton v. Commissioner, 70 T.C. 263, 275-276 (1978). Thus, the value of the consideration provided by David must be judged as of the time the contract was made. Likewise, the value of the consideration that decedent provided (a promise to give one-third of her estate) must be measured at the time the contract was entered into.

There is no direct evidence of the 1976 value of David's promise to provide lifetime services or of the 1976 value of decedent's promise to give David one-third of her estate. We must therefore look to other factors to determine whether the mutual promises of decedent and David constitute adequate and full consideration in money's worth. Generally, the best indication of value is that which unrelated parties, dealing at arm's length, agree to. See Bank of New York v. United States, supra at 1016-1017.

David was not related to decedent. He was not the natural object of her bounty or affection. At the time of the agreement,

neither party could have known the ultimate results that their respective promises would produce, since both promises depended upon unknown future events and conditions. The nature and the duration of the services that David was obligated to perform were dependent upon decedent's condition and longevity. The value of one-third of decedent's estate was dependent upon whatever expenditures were made to meet her needs and desires during her life and fluctuations in the value of her assets. See Estate of Hartshorne v. Commissioner, supra at 596; Estate of Fenton v. Commissioner, supra at 276-277. Nevertheless, decedent and David struck their bargain. Based upon the facts presented, we find that their mutual promises were based on adequate and full consideration in money's worth and not intended as a substitute for a testamentary disposition. Our conclusion is supported by the results of the adversarial litigation between David and the estate and their arm's-length structured settlement. See First Natl. Bank of Amarillo v. United States, 422 F.2d at 1388.[3]

---

[3]In Estate of Boyce v. Commissioner, T.C. Memo. 1972-204, affd. in part, revd. in part and remanded sub nom. Wilder v. Commissioner, 493 F.2d 608 (2d Cir. 1974), respondent disallowed deductions for amounts paid to decedent's attorney for legal services rendered during decedent's life. Respondent conceded that the deduction claimed by decedent's estate was allowable pursuant to sec. 2053, in the event we decided in a companion case that the decedent's attorney was required to include the distribution from decedent's estate in gross income. In the companion case, we found such amounts to be includable in the income of decedent's attorney and, therefore, held that decedent's estate was entitled to a deduction in the same amount.
(continued...)

Daniel's claim against the estate is for all practical purposes the same as David's, and we believe that the same considerations warrant our holding that the mutual, arm's-length promises of decedent and Daniel constituted adequate and full consideration in money's worth. The fact that the amount of the settlement disposing of Daniel's claim was somewhat greater than David's settlement has no bearing on our finding. Settlement figures are generally arrived at after considering the uncertainties of litigation. However, our focus in analyzing the adequate and full consideration issue falls on the point at which decedent and Daniel decided to make their bargain.

Decision will be entered
under Rule 155.

---

[3](...continued)
Estate of Boyce v. Commissioner, supra. In the instant case, both David and Daniel agreed to treat the settlement payments as compensation received.