**Charles L. POPE and Harold L. Pope, Jr., Executors of the Will of Harold L. Pope, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3363–SD.**

United States District Court
S. D. California.

Nov. 15, 1968.

18

Ralph W. Squier, and Davies & Burch, San Diego, Cal., for plaintiffs.

Edwin L. Miller, Jr., U. S. Atty., Southern Dist. of California, San Diego, Cal., for the United States.

## MEMORANDUM OF DECISION

KUNZEL, Chief Judge.

This case is submitted in the main on stipulated facts. Evidence was taken only on some limited issues which will be hereafter mentioned.

Plaintiffs seek a refund of taxes paid to the United States. This court has jurisdiction by virtue of 28 U.S.C.A. § 1346(a) (1).

Harold L. Pope, referred to as decedent, died on April 3, 1962. Up until the time of his death he was the holder of a life estate in personalty, the corpus or remainder of which he had transferred in trust to his children.

Plaintiffs, as executors of the estate, filed a federal estate tax return on June 21, 1963. Using the alternate date of one year after decedent's death, the corpus of the trust was fairly valued at $326,855.28. The District Director included the entire amount in decedent's gross estate under 26 U.S.C.A. (I.R.C. 1954) §§ 2036(a) and 2038. Plaintiffs paid a tax of $74,439.28.

In the original tax return plaintiffs claimed a credit for California inheritance tax paid in the amount of $8,930.00. This tax was later refunded by the State of California. A deficiency was assessed for the federal estate tax and on June 2, 1965, plaintiffs paid an additional $5,325.59, plus interest in the amount of $612.56.

On June 3, 1965, plaintiffs filed an amended claim for refund representing the total sum of $80,378.43. The claim was disallowed resulting in the instant lawsuit.

In 1930 decedent created a trust which provided that his wife, Clara H. Pope, receive a yearly income of $4,200.00; the remainder was to go to their children upon the death of the survivor of decedent and Clara. Decedent retained a power to revoke or amend the trust. At the time of its creation the trust corpus was worth about $100,000.00.

Decedent and Clara entered into a separation agreement in 1936 and the trust was amended pursuant to this agreement shortly thereafter. The amendment provided that Clara was to receive from $2,400.00 to $3,600.00 a year for life. She was also to receive a medical allowance of up to $1,500.00 a year. Decedent retained the power to revoke or amend the trust subject to Clara's consent "during her lifetime." The terms of the trust and separation agreement, and the facts surrounding their execution are in dispute. At this time the corpus of the trust was worth $67,000.00.

Clara died in 1956. At the time of her death the corpus of the trust was worth $140,000.00. Shortly after Clara's death decedent added $59,000.00 to the trust. Plaintiffs do not dispute the fact that this proportionate amount is includible

in decedent's estate. At the time of decedent's death the corpus of the trust was worth $326,855.28. The amount disputed here is $\frac{140}{199}$ x $326,855.28 or $229,948.44.

Plaintiffs seek a refund of the proportionate amount of tax paid based on 'his recomputed figure.

Plaintiffs contend that:

(1) decedent transferred the remainder to the children in 1936 in exchange for the release of Clara's support right *and* retained no power to revoke or amend the trust after Clara's death;

(2) in a bargained for exchange, such as here, there is a presumption of full and adequate consideration;

(3) if there is no presumption of full and adequate consideration, plaintiffs have established partial consideration under 26 U.S.C.A. (I. R.C.1954) § 2043(a);

(4) in any event, section 2036(b) applies and exempts the transfers from taxation.

Defendant contends that:

(1) decedent did not transfer the remainder to the children as part of any bargained for exchange in 1936;

(2) if decedent did transfer the remainder to the children in 1936 as part of a bargained for exchange, there is no presumption of full and adequate consideration under section 2036(a) or section 2038 as applied to the transfer in question;

(3) section 2036(b) does not apply under the facts of the case;

(4) section 2036(a) and section 2038 are applicable and bring back the proportionate amount of the corpus at the time of decedent's death into decedent's estate.

The controversy here centers around the remainder interest transferred to the children. The evidence is almost entirely documentary.

At trial, plaintiffs introduced: (1) the original trust indenture of June 10, 1930; (2) the supplemental trust indenture of July 30, 1936; (3) the supplemental trust indenture of September 17, 1938; (4) the supplemental trust indenture of October 24, 1950; and (5) the separation agreement between decedent and Clara, dated April 1, 1936.

Defendant introduced: (1) a letter dated April 1, 1936, from decedent's attorneys (Gray, Cary, Ames & Driscoll) to Clara's attorneys (Gross, Hyde & Williams); (2) a letter from Clara's attorneys, dated May 23, 1936, to decedent's attorneys; (3) a letter dated July 8, 1936, from decedent's attorneys to Clara's attorneys; and (4) the affidavit of Jonathan Schwartz, actuary, regarding the valuation of Clara's life estate.

In addition, three of decedent's children testified.

The documentary evidence was introduced without objection. However, there is some dispute regarding the admissibility of portions of the children's testimony. The children testified as to statements made by Clara and decedent to the effect that the trust was irrevocable upon Clara's death, and that Clara bargained for the transfer of the remainder to the children in 1936.

Considering the children's testimony in its entirety, with the exception of the hearsay statements attributed to decedent and Clara, it is admissible. The testimony concerning the parents' conduct toward each other and the children, the family mode of living, and decedent's relationship with another woman is relevant and material to the determination of both the facts leading up to and surrounding the 1936 transaction, and the value of Clara's support right.

However, the hearsay statements of Clara and decedent are not admissible. Plaintiffs concede the statements are hearsay but contend that they qualify as so-called state of mind exceptions to the hearsay rule. Such a con-

tention is without merit. Under this exception to the hearsay rule, when the declarant's statements deal with past events or conduct and are not indicative of mental state at the time of the utterances they are generally excluded. Here the issue was not Clara's or decedent's state of mind at the time of the statements but what the parties bargained for in 1936. Moreover, the key requirement for the admission of a hearsay statement as an exception to the hearsay rule is trustworthiness. In the instant case, there has been a considerable time lapse since the statements were made, and there is no way of discerning the declarants' motives in making such statements or the conditions under which they spoke. What's more, for the most part the statements are either self-serving or capable of different interpretations.

We now turn to the facts of the case. The classic situation of a retained life estate under section 2036(a) or a retained power to revoke under section 2038 where the estate argues partial or full consideration under section 2043(a) is when the transferor/settlor has received something in exchange for the transfer which corresponds to the amount by which his estate was depleted. Usually the decedent transfers the remainder to someone and retains a life estate or transfers the corpus in trust to someone and retains a power to revoke. The transferor/settlor then dies and the government attempts to bring the entire amount of the remainder or corpus back into his estate under section 2036(a) or section 2038. In each case, the critical question, the pivotal question, is whether the remainder or corpus was transferred for valid consideration, i. e., a bargained for exchange.

In order to determine what was in fact the "bargain," i. e., what was transferred by decedent in exchange for the release of Clara's support right, we must construe the trust and separation agreement.

■ In the original trust instrument decedent reserved the exclusive power to revoke or amend the trust. The 1936 amendment which was executed pursuant to the separation agreement also reserved such a power but made its exercise subject to Clara's consent "during her lifetime." The two amendments subsequent to the 1936 amendment contain language identical to the 1936 amendment, to wit:

" * * * Donor [decedent] * * * expressly reserved the right, privilege and power of revoking * * * at any time * * * but subject to the written consent during her life time of Clara H. Pope." (1938 amendment)

"Subject to the written consent during her lifetime of the said Clara H. Pope, the Donor [decedent] expressly reserves the right, privilege and power to revoke this trust * * *." (1950 amendment)

Both of these amendments were signed by Clara and decedent. And, of course, the 1936 amendment was accepted by Clara. Under the general rule that the last expression of the parties should control, any ambiguity in the separation agreement was cured by the subsequent acts of Clara in accepting the 1936 amendment, and accepting and signing the two subsequent amendments.

The "during her lifetime" proviso seems superfluous since Clara could only approve or disapprove while alive. However, the language does give meaning to the agreement in that it expressly defines the period during which decedent's power was limited or qualified. Taken alone, the only reasonable conclusion is that upon Clara's death decedent once again possessed exclusive power to revoke or amend the trust. This conclusion indicates that all Clara was bargaining for was a guaranteed life estate and medical allowance.

In opposition, plaintiffs argue that the language of the separation agreement is to the contrary and must control. The only language upon which plaintiffs can base their argument is the following, taken from the separation agreement:

"Upon the death of the survivor of the parties hereto, the income and principal of said trust shall be paid out and

distributed in the manner now provided for in the trust indenture of June 10, 1930, creating such trust."

"The First Party [decedent] * * * shall surrender and waive all his right to thereafter alter, amend or revoke said trust or any provision thereof without the consent of the Second Party [Clara]."

" * * * any and all income in excess of $3,600.00 shall be paid to the First Party, and should he survive the Second Party, after her death all net income shall be paid to him * * *."

At best, this language is ambiguous. Plaintiffs argue that the retention of a secondary life estate for decedent negates the contention that decedent was to retain a power to revoke after Clara's death. However, the original trust instrument had the same provision and there decedent also retained a power to revoke or amend. Likewise, the language dealing with the remainder incorporates an earlier trust provision.

While it could be argued that the separation agreement was illusory if decedent was to have the power to revoke after Clara's death, the counter argument is that since Clara received (1) a guaranteed life estate, (2) a medical allowance, and (3) a shared power to revoke or amend during her lifetime, she was placed in a much more favorable position than she held in 1930 when decedent could have cut her out at will.

Plaintiffs' argument falls when the result is examined. They would have us believe that decedent relinquished exclusive control over a $67,000.00 corpus for the release of a support right with a present value of only $25,000.00 to $40,-000.00.

 It is, therefore, concluded that upon the death of Clara decedent once again possessed the exclusive power to revoke or amend the trust. This conclusion is based on the following reasons: (1) that the express language of the trust instrument so states and should control; (2) that the language plantiffs

advert to in the separation agreement is ambiguous and does not support their contention that decedent's power to revoke terminated upon Clara's death; and (3) that the acceptance of the 1936 trust amendment, and the acceptance and signing of the later two amendments removed any doubt as to what powers decedent retained.

Under the facts of the case and the terms of the trust and separation agreement, three possible transactions could have taken place in 1936. They are:

(1) decedent transferred a guaranteed life estate and medical allowance to Clara in exchange for the release of her support right.

(2) decedent transferred a life estate to Clara and the remainder to the children in exchange for the release of her support right *but* retained power to revoke or amend after Clara's death.

(3) decedent transferred a life estate to Clara and the remainder to the children in exchange for the release of her support right *and* also released any power to revoke or amend after the death of Clara.

Numbers one and two are the same in substance but not in form. Unfortunately, however, many tax provisions are concerned more with form than substance. Sections 2036(a) and 2038, as well as 2043(a), fall into this category. Substance wise, at the time of his death decedent had the sole power to revoke or amend in both numbers one and two. However, if decedent transferred only a life estate, as in one, then plaintiffs lose since there was no bargained for exchange regarding the transfer of the remainder to the children. If such is the case, then the remainder to the children was transferred gratuitously in 1930 and the proportionate amount of the corpus at the time of decedent's death is brought back under section 2036(a) or section 2038. And the transfer of the life estate alone constitutes a consummated transaction irrelevant to the outcome of this case.

On the other hand, if decedent transferred a life estate to Clara and "retransferred" the remainder to the children, as in number two above, then the issue of partial or full consideration can be reached. However, since the 1930 trust instrument already provided that the remainder was held in trust for the children this alleged transfer seems like a meaningless ritual. In addition, the retention by decedent of a power to revoke or amend after Clara's death merely reiterates another provision of the original trust instrument.

Since the result of number two is the same as number one, and the apparent absurdity of such a possibility refutes itself, plaintiffs choose to argue the third possibility, i. e., that decedent also released his power to revoke or amend after the death of Clara.

■ However, having already found that decedent retained the power to revoke or amend the trust after Clara's death, we are left with two possibilities regarding what the parties bargained for in 1936. Number one, that only a guaranteed life estate and medical allowance were transferred, is logical, reasonable, and supported by the evidence. Number two, that decedent "retransferred" the remainder to the children yet retained the power to revoke after Clara's death is highly improbable, unsupported by the evidence, and presupposes that the parties were attempting to circumvent the federal estate tax by going through a pointless ritual.

Since, upon the death of Clara, decedent was in the same position he held prior to the execution of the separation agreement and the 1936 trust amendment, he cannot be said to have changed the admittedly donative nature of the 1930 transfer of the remainder to the children. The only possible gain Clara might have received by such an arrangement is the possibility of decedent predeceasing her. When decedent gave up the exclusive power to revoke or amend during Clara's lifetime, the remainder was bound to go to the children if decedent predeceased Clara (absent any attempt to revoke or amend by Clara). However, such a gamble is mere conjecture at this point. There is no evidence indicating that Clara was bargaining for such a remote advantage or that if she were it would affect the application of sections 2036(a) and 2038 to the facts of the case.

■ Plaintiffs are contending that what occurred in fact is exactly what Clara may have desired, not the bargain the parties eventually struck. It goes without saying that, absent fraud or mutual mistake, the unilateral expectations of one party to a prospective bargain are superseded by the ultimate agreement.

The facts here indicate that decedent and Clara were experiencing marital difficulties and had ceased living together as early as 1928. Decedent created the trust in 1930 with Clara's knowledge but not at her request. Clara was aware of the trust provisions, and decedent's retained power to revoke or amend the trust. During this time decedent had been keeping company with another woman. Clara, concerned about the security and welfare of the children and herself, obtained counsel and entered into negotiations regarding a property settlement agreement. The record reveals that Clara would not agree to a divorce until a more definite and secure financial arrangement could be made. Clara's chief fear was that decedent would exercise his power to revoke and leave the children and her out in the cold.

■ Counsel for plaintiffs concedes that any alleged transfer of the remainder to the children was "incidental to the main purposes of providing support for Mrs. Pope." The letters of counsel, the testimony of the children, and the express language of the trust instruments indicate that Clara bargained for and received a guaranteed life estate, a medical allowance, and a shared power to revoke or amend the trust during her lifetime. The language of the separation agreement does not support a finding to the contrary. In light of these facts, the

inescapable conclusion is that the remainder was transferred gratuitously to the children in 1930. Therefore, the proportionate amount of the remainder or corpus in question is includible in decedent's estate under sections 2036(a) and 2038.

Plaintiffs contention that section 2036 (b) exempts the transfer is only relevant if this court were to find that decedent did not die possessed of a power to revoke or amend the trust. Otherwise, section 2038, dealing with revocable transfers, would still apply and there would be no point in reaching the section 2036 (b) issue.

 In any event, it is now well established that section 2036(b) applies only to irrevocable trusts created prior to March 4, 1931. Commissioner of Internal Revenue v. Talbott's Estate, 403 F.2d 851 (4th Cir., Sept. 20, 1968); Studebaker v. United States, 195 F.Supp. 841 (N.D.Ind.1961), modified, 211 F. Supp. 263 (1962); Smith v. United States, 139 F.Supp. 305, 134 Ct.Cl. 136 (1956).

While there had been a split of authority regarding the application of section 2036(b) prior to *Talbott, supra,* no previous case held to the contrary on facts identical or similar to the instant case. Plaintiffs cite Commissioner of Internal Revenue v. Ridgway's Estate, 291 F.2d 257 (3d Cir. 1961), and Commissioner of Internal Revenue v. Canfield's Estate, 306 F.2d 1 (2d Cir. 1962), in support of their contention that decedent brought himself within the narrow confines of section 2036(b). However, both of these cases dealt with situations where the settlor had placed legal title to the corpus beyond recall by himself acting alone. In neither case had the settlor expressly retained a power to revoke such as decedent did in the instant case.

The court in *Canfield, supra,* cited *Ridgway's Estate, supra,* as authority yet limited its holding to the specific facts present. It went on to say:

"What result we would reach in a case involving a trust revocable by the settlor acting alone * * * is a question we need not and do not decide." 306 F.2d at 8.

Therefore, even without the recent holding in *Talbott, supra,* this court is not compelled to find section 2036(b) applicable to the facts of the instant case.

The few cases falling within the narrow reach of section 2036(b) concern retained life estates or limited powers of appointment and not retained powers of revocation such as we have here. Since the main purpose of the estate tax is to prevent various degrees of estate depletion it is entirely consistent to distinguish between a retained life estate or limited power of appointment with no possibility of returning title to oneself, and a retained power to revoke such that everything can be brought back at the settlor's pleasure.

The above cited cases analyze the legislative and judicial history of section 2036 (b), and its predecessors, in minute detail. There is no need to duplicate such analyses here. This section was enacted to exempt a small class of persons who had possibly relied on May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930), and related cases. Its application is narrowly prescribed, so narrow that decedent's estate does not come within its reach. The facts in the instant case indicate without question that decedent created the trust on June 10, 1930, and as of March 4, 1931, he had sole power to revoke or amend its provisions. Therefore, section 2036(b) does not apply under any interpretation of the post-1931 facts.

 Assuming a transfer of the remainder to the children in 1936, plaintiffs cite United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), for the proposition that under a predivorce property settlement agreement the support right released is presumed to be equal in value to the property exchanged. This case is inapposite here because (1) *Davis* only applies in cases where the value of the right released cannot be ascertained—here the right has

been valued; and (2) *Davis* was an income tax case dealing with a different problem and presenting different tax policies. Moreover, the recent case of United States v. Past, 347 F.2d 7 (9th Cir. 1965), held that there is no presumption of full and adequate consideration in a section 2036(a) or section 2038 situation such as we have here. The court in *Past* distinguished *Davis* and similar cases. Therefore, in order to prevail plaintiffs would have to prove that decedent received partial consideration under section 2043(a) in exchange for the remainder interest transferred.

Defendant concedes that the support right released by Clara qualifies as consideration "in money or moneys worth" under the proviso in section 2036(a) or section 2038. However, the amount is disputed. Plaintiffs contend that the right was worth $39,000.00. Defendant argues that it was worth $25,000.00. Plaintiffs base their argument on the fact that Clara could receive $3,600.00 a year plus a medical allowance. Defendant contends that since Clara was only guaranteed $2,400.00 a year, this must be the basis for computation. There is no hard and fast rule regarding such an evaluation but it is safe to conclude that a California court would have given Clara an amount comparable to what she had previously lived on while separated from decedent. Prior to the 1936 agreement Clara had been receiving $4,200.00 a year under the terms of the 1930 trust. Therefore, it is a little unreasonable to conclude that the $2,400.00 a year figure should be used as a computational basis. Whatever the value, this dispute becomes academic when we apply the principle of partial consideration to the facts of the case.

The concept of partial consideration must be applied within the context of the entire transaction. In the normal situation involving section 2036(a) or section 2038, the decedent transfers the remainder or corpus to the wife in exchange for some sort of consideration and retains a life estate or power to revoke. The life estate or power to revoke terminates at his death and is not taxed in his estate. However, the remainder or corpus is, to the extent decedent did not receive consideration for the transfer. If such were the case here, the value of the remainder or corpus would be reduced by approximately $39,000.00. But in the instant case, again assuming a transfer as plaintiffs contend, Clara exchanged $39,000.00 for the remainder *and* a life estate worth $39,000.00 (the valuation being identical). Defendant contends that what Clara released was offset or "washed out" by what she received as a life estate and that the remainder should now be taxed in decedent's estate.

Plaintiffs cite Estate of Morrison T. O'Nan, 47 T.C. 648 (1967), and Estate of Robert Rodger Glen, 45 T.C. 323 (1966), in support of their contention that the life estate Clara received should be ignored and the remainder reduced by the value of the support right.

At the time of trial, *Glen* was on appeal. Since then the parties have reached a compromise and settled. The Ninth Circuit remanded the case with the suggestion that the tax court decision be vacated, therefore, plaintiffs find no support in this case.

The only other string in plaintiffs' bow is *O'Nan*, however, this case is distinguishable on many points. In *O'Nan* the husband transferred two farms to the wife, and retained a life estate in each. In addition, the husband agreed to provide the wife with "alimony" payments of $4,000.00 a year and various food products from the farms. The Government contended there, as here, that the "alimony" payments and the farm products equaled the value of the wife's support right, hence the remainders were includible in the husband's estate. The court rejected the argument because it was unable to place a value on the wife's support right. It based its holding on the fact that under Kentucky law the wife's support right is of an equitable nature. The court then concluded that since the divorce court incorporated the

settlement agreement *in toto* it found full and adequate consideration. Indeed, state law provided for such a presumption. The court went on to analogize a section 2036(a) situation with income tax cases such as *Davis, supra.*

A reading of *O'Nan* reveals that it is in direct conflict with *Past.* The tax court in *O'Nan* did exactly what this Circuit has stated it will not do, i. e., presume full and adequate consideration when a property settlement agreement is incorporated in or predicated on a divorce decree. In *Past, supra,* the court correctly reasoned that such a rule would defeat the purpose behind section 2036(a) and the provisions for partial consideration under section 2043(a), as well as invite collusion by the parties.

Any solace plaintiffs find in the similarity of facts in *O'Nan* and the instant case is made illusory by the court's holding. In presuming full consideration the court never reached the issues that would follow from a piecemeal evaluation and a true balance sheet analysis. What's more, the facts in *O'Nan* indicate that there was no evidence of donative intent, such as we have here in the 1930 transfer, and there the remainder was transferred to the wife, not the children as in the instant case.

In short, plaintiffs have neither cited authority nor given any reason why this court should ignore the life estate Clara received when applying the principle of partial consideration under section 2043 (a). In the few cases actually coming to grips with the problem, the decedent did not transfer anything in addition to the remainder interest. For this court to divide an integrated transaction into two individual transfers, then disregard one for purposes of consideration would result in an artificial distinction unwarranted by either the language of the statute or the cases decided under it.

In conclusion, even if this court were to find that the remainder had been transferred to the children in 1936 as part of the bargain, it still was not exchanged for full and adequate considera-

tion, or even partial consideration, and is includible in decedent's estate. Therefore, on both the facts and the law, plaintiffs have presented no claim for relief.

The issue relative to the amount of attorney's fees for which plaintiffs may receive credit on the tax paid is left open. Unless the parties can agree on the amount, a hearing shall be held on November 22, 1968, at 2 o'clock P.M., at which time plaintiff may introduce evidence on the reasonableness of the attorney's fees.

This memorandum shall constitute the findings of fact and conclusions of law. Defendant shall prepare, serve and lodge a judgment in accordance herewith.