ESTATE OF BARBARA T. BOYDSTUN, Deceased, FRANK W. BOYDSTUN, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Boydstun v. Commissioner
Docket No. 22396-81.
United States Tax Court
T.C. Memo 1984-312; 1984 Tax Ct. Memo LEXIS 361; 48 T.C.M. (CCH) 311; T.C.M. (RIA) 84312; June 20, 1984. Robert Rosenberg, for the petitioner. Charlotte A. Mitchell, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the estate tax of Barbara T. Boydstun, deceased, in the amount of $29,480. The issue for decision is whether the estate of Barbara T. Boydstun is entitled to a marital deduction under section 2056(a) [1] for community property of Barbara T. Boydstun transferred into a trust. [2]
*363 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner is the estate of Barbara T. Boydstun, deceased, Frank W. Boydstun, executor. At the time of the filing of the petition in this case, Mr. Boydstun resided in Oakland, California. Barbara T. Boydstun (decedent) died on December 13, 1978, after an extended illness. Mr. Boydstun, as executor of her estate, filed an estate tax return in which a marital deduction of $100,997 was claimed. On September 1, 1978, at which time decedent was mentally lucid, she and Mr. Boydstun entered into a trust agreement. The first paragraph of this agreement, entitled "Declaration of Trust," recited as follows: FRANK W. BOYDSTUN and BARBARA T. BOYDSTUN (referred to in this instrument as "Settlors") declare that they have transferred and delivered to FRANK W. BOYDSTUN (referred to in this instrument as "Trustee") the property hereinafter described to be held, administered and distributed as provided below. The agreement recited that the Settlors' intention was that all community property transferred to the trust and the proceeds thereof (called the community estate) should continue to retain its character *364 as community property during their joint lifetimes, subject to all the terms of the Declaration of Trust. It was specifically recited that it was the Settlors' intention that the Trustee have no more extensive power over any community property transferred to the trust estate than either of the Settlors would have had under California Civil Code sections 5124 and 5125 (West 1970) had the trust not been created, but that this limitation would terminate on the death of either Settlor. The agreement provided that it was the Settlors' intention that any separate property of either spouse and the proceeds thereof (called the separate estate) should retain its character as such during the joint lifetimes of the Settlors, subject to the terms of the trust declaration. The trust provided that during the joint lifetimes of decedent and Mr. Boydstun, the Trustee should pay to them, as managers of the community property owned by them, or apply for their benefit, the entire net income of the community estate quarterly or in more frequent installments. It also provided that at the written request of Mr. Boydstun and decedent, as managers of the community property, the *365 Trustee should pay to them as community property so much of the principal of the community estate as they request. It further provided that during the joint lifetimes of the Settlors the Trustee should pay to either Settlor, or apply for his benefit, the entire net income of that Settlor's separate estate, quarterly or in more frequent installments; and at the written request of the Settlor who transferred the separate estate to the trust, the Trustee should pay to such Settlor so much of the principal of the separate estate transferred by him as he requests. The trust further provided that upon the death of the first of the Settlors to die (predeceased spouse), the Trustee may, in the Trustee's discretion, pay out of the trust estate the predeceased spouse's expenses for last illness and funeral expenses, attorneys' fees and other costs incurred in administering the predeceased spouse's probate estate, and pay any estate or inheritance taxes arising by reason of the predeceased spouse's death. The agreement provided that upon the death of the predeceased spouse, the Trustee should divide the trust estate, including any additions made to the trust estate as a result of the death *366 of the predeceased spouse, into two separate trusts, designated "Trust A" and "Trust B." The agreement provided that if decedent is the predeceased spouse, Trust A shall consist of the surviving spouse's interest in the community estate, the surviving spouse's separate estate, if any, included in the trust estate, and the predeceased spouse's interest in the community estate; and Trust B shall consist of the balance of the trust estate representing the predeceased spouse's separate estate included in the trust estate. In further provided that if the predeceased spouse is Mr. Boydstun, Trust A shall consist of the surviving spouse's interest in the community estate, the surviving spouse's separate estate, if any, included in the trust estate, and one-half of the predeceased spouse's separate estate, if any, included in the trust estate; and Trust B shall consist of the balance of the trust estate representing the predeceased spouse's interest in the community estate, and the remaining one-half of the predeceased spouse's separate estate included in the trust estate. It further provided that upon the death of the predeceased spouse, if the predeceased spouse was decedent, the Trustee *367 should pay from Trust B the sum of $5,000 each to Margaret Fineman and Beverley Boydstun Richardson (the two daughters of Mr. Boydstun and decedent) if they were then living. The agreement provided that after the death of the predeceased spouse, if the predeceased spouse was Mr. Boydstun, the Trustee should pay to the surviving spouse the entire net income of Trust A and Trust B quarterly, or in more frequent installments. It also provided that after the death of the predeceased supuse. if the predeceased spouse was decedent, the Trustee should pay to the surviving spouse the entire net income of Trust A and one-half of the net income of Trust B, and should pay to Margaret Fineman and Beverley Boydstun Richardson each one-fourth of the net income of Trust B. It made provision for the payment of the trial income of Trust B to the surviving spouse if Margaret Fineman and Beverley Boydstun Richardson predeceased decedent. The trust contained the following provision: If the Trustee deems the net income of both trusts to be insufficient, the Trustee shall also pay to or apply for the benefit of the surviving spouse from time to time so much principal as the Trustee, in the Trustee's *368 discretion, deems necessary for the surviving spouse's proper support, care, maintenance and health, after taking into consideration to the extent the Trustee deems advisable, any income or other resources of the surviving spouse outside the trust estate, known to the Trustee. All principal payments shall first be made out of Trust A until it is exhausted, and thereafter out of Trust B. The trust declaration provided that upon the death of the surviving spouse, the Trustee should distribute any remaining assets of Trust A and Trust B, including accrued income, to the Settlors' then-living issue by right of representation. It provided that if no such living issue existed, all of the trust estate that was decedent's separate property and one-half of the trust estate that was community property should be distributed to the then-living nieces and nephews of decedent, and that all of the trust estate which was the separate property of Mr. Boydstun and one-half of the trust estate that was community property should be distributed to his then-living nieces and nephews. Section IV of the Declaration of Trust, entitled "Powers to Amend and Revoke," provided as follows: During the *369 joint lifetime of the Settlors, the community estate may be revoked in whole or in part by either Settlor, and any separate estate may be revoked in whole or in part by the Settlor who created it. The power of revocation shall be exercised by written notice delivered to the other Settlor and to the Trustee. In the event of such revocation, the community estate or the revoked portion shall revert to both Settlors as their community property, and the separate estate shall revert to the Settlor creating it and shall constitute his separate property as if this Trust had not been created. This Trust may not be amended during the lifetime of both Settlors without the written agreement of both of them. From and after the death of the predeceased spouse, Trust B shall be irrevocable and may not be amended, revoked or terminated. The Declaration of Trust further provided that other property acceptable to the Trustee may be added to the trusts by any person, by the wills of either Settlor and by the proceeds of any life insurance policy. It further provided that if for any reason Mr. Boydstun should cease to act as trustee, decedent should act as trustee; that if she was unable or *370 unwilling to act, Margaret Fineman and/or Beverley Boydstun Richardson and/or Hugh Brown should act as trustee; and that no bond would be required of any person named as trustee in the Declaration of Trust. Decedent's will provided for the disposition of her household furniture and furnishings, personal automobiles and other tangible articles of a personal nature, or her interest in any such property not otherwise disposed of to her husband if he survived her and if he did not survive her, to her children, share and share alike. The will provided: FOURTH: I give the residue of my estate to the Trustee of the trust created by the Trust Agreement dated this date of which my husband and I are Settlors and my husband is the Trustee. I direct that the residue of my estate shall be granted to, administered and distributed as part of that trust according to the terms of that trust and any amendments made to it before my death. It is not my intent to create a separate trust by this Will or to subject the trust or the property added to it by this Will to the jurisdiction of the probate court except to the extent provided for in the trust mentioned above or in California Probate Code *371 secs. 1138-1138.13. FIFTH: If the disposition in Paragraph FOURTH is not operative or is invalid for any reason or if the trust referred to in Paragraph FOURTH fails or has been revoked then I hereby incorporate by reference the terms of that trust as executed on this date without giving effect to any amendments made subsequently and I give the residue of my estate to the Trustee named in the trust as Trustee to be held, administered and distributed as provided therein. Respondent in his notice of deficiency to decedent's estate disallowed $98,335 of the claimed marital deduction with the following explanation: The marital deduction of $100,997 as reported on the Federal Estate Tax return has been reduced by $98,355. This reduction is based on the fact that the decedent's property in Trust A which is necessary to support said marital deduction did not vest with the surviving spouse nor did the surviving spouse have any power of disposition over the assets of the decedent's interest in Trust A as is required under section 2056 of the 1954 Internal Revenue Code. * * * OPINION Section 2056(a) provides that for estate tax purposes the value of a taxable estate, except as *372 limited, shall be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. One of the limitations is as to the amount of the deduction, and that limitation is not here involved. Another limitation is contained in section 2056(b). This section provides that where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest if an interest in such property passes or has passed from decedent to any person other than such surviving spouse, and by reason of such passing, such person may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse. Subparagraph b(5) of section 2056 provides that in the case of an interest in property passing from decedent to a surviving spouse where the surviving spouse is entitled *373 for life to all the income from the entire interest, or all the income from a specific portion thereof, with power in the surviving spouse to appoint the entire interest or such specific portion exercisable in favor of such surviving spouse, or the estate of such surviving spouse, or in favor of either, and there is no power in any other person to appoint any part of such interest or portion to any person other than the surviving spouse, the interest or such portion thereof, so passing, shall be considered as passing to the surviving spouse and not be considered as passing to any person other than the surviving spouse. The power in the surviving spouse to appoint the entire interest, or a specific portion thereof, must be exercisable by such spouse alone and in all events. It is respondent's position that the only interest decedent's spouse, Mr. Boydstun, had in Trust A was the income therefrom for life and a power of invasion by an ascertainable standard. Respondent contends that this interest is not sufficient to permit the community property of decedent placed in the trust to be considered as other than a terminable interest within the meaning of section 2056(b). It is petitioner's *374 position that Mr. Boydstun had the equivalent of a power of appointment over all the property in Trust A within the meaning of section 2056(b)(5), and for that reason the community property of decedent placed in the trust is property which is properly a part of the marital deduction. Petitioner contends that Trust A is revocable by Mr. Boydstun even though such right to revoke after decedent's death is not expressly stated in the Declaration of Trust. Petitioner takes the position that the power of Mr. Boydstun to revoke Trust A may be inferred from the language concerning revocability during the joint lifetime of Mr. Boydstun and decedent, and the specific statement of irrevocability of Trust B after the death of one of them. Petitioner contends that, in any event, Mr. Boydstun had the power to amend Trust A and that this power is equivalent to a power to revoke and that upon revocation of Trust A by Mr. Boydstun, all assets of Trust A would pass to him. Petitioner further argues that the record is sufficient to show that it was the intention of Mr. Boydstun and decedent that all of the assets in Trust A are to be treated the same and that Trust A was to be revocable by the survivor *375 of them. [3]
Petitioner first argues that the instrument on its face is sufficient to show that under California law Mr. Boydstun had a power to revoke, and on that basis argues that the motion for summary judgment should be granted. Secondarily, petitioner argues that the testimony at the trial shows that it was the intent of both Mr. Boydstun and decedent that Trust A was to be revocable by *376 the surviving spouse. After considering the testimony at the trial, we have concluded that the testimony deals only with Mr. Boydstun's belief with respect to revocability of the trust at the time the Declaration of Trust was entered into, but does not show either decedent's intention as to revocability after her death in creating the trust or her belief as to what the trust accomplished in this regard. The substance of Mr. Boydstun's testimony was that he and his wife really did not discuss the matter, although she read the trust instrument before she signed it and was mentally competent at the time she signed it. The record shows that at the time the trust instrument was entered into, decedent was approaching the end of a long illness which she knew to be terminal. Mr. Boydstun testified that although the provision was made in the trust for his predeceasing decedent, he did not anticipate that this would occur but anticipated that decedent would predecease him. After considering the testimony at the trial as a whole, we conclude that it adds nothing to the provisions of the trust instrument as to decedent's intent with respect to the community property she placed in the trust. *377 For this reason, we will draw our conclusions as to the revocability of Trust A from consideration of the provisions in the trust instrument. [4]
Both parties recognize that whether Trust A is revocable by Mr. Boydstun after decedent's death is a question to be determined under the law of the State of California. California Civil Code, section 2280 (West 1954), provides: Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. * * * This provision, in our view, deals with Mr. Boydstun's right as the trustor with respect to his half of the community property and any separate property he placed in the trust (although the record indicates that no such separate *378 property was placed by Mr. Boydstun in the trust prior to decedent's death) to revoke the trust as to those assets. It does not deal with his right to revoke with respect to decedent's half of the community property placed in the trust and her separate property placed in the trust with respect to which she was the trustor. Although the right of a trustor to revoke a voluntary trust seems clear under California law, the trust instrument specifically provided that either Settlor (trustor) could revoke the trust as to the community estate "during the joint lifetimes of the Settlors." The trust instrument provided for the method by which either party could revoke the trust during the joint lifetimes of the Settlors. Certainly the record is clear that Mr. Boydstun was the Settlor or trustor of the estate as to his one-half of the community property and decedent was the Settlor or trustor as to her community property. Under California statute, it may well be that each Settlor could revoke with respect to his or her community property or one-half of the total community property during his or her lifetime. However, Section IV of the Declaration of Trust provided that during the joint lifetimes *379 of the Settlors the community estate may be revoked in whole or in part by either Settlor, and any separate estate may be revoked in whole or in part by the Settlor who created it. It would appear that to permit either Settlor to revoke the community estate in whole went beyond the provision of the statute since that Settlor was the trustor of only one-half of the community property. However, Section IV provided how the revocation should be made and that the community estate or the revoked portion should revert to both Settlors as their community property. If it is viewed, as it appears to us it must be, that decedent was the Settlor or trustor of her one-half of the community property, it would seem to follow that neither the provision of Section IV nor the provision of the California statute would provide for revocation with respect to decedent's one-half of the community property by Mr. Boydstun after decedent's death. Mr. Boydstun specifically testified that decedent was aware of her rights in the community property and her right of testamentary disposition of that property. [5] The clear wording of Section IV refers to the right of either Settlor to revoke "during the joint *380 lifetime of the Settlors." Petitioner relies on the case of Pope v. United States,296 F.Supp. 17 (S.D.Cal. 1968), in support of the position that the words "during the joint lifetime" should not be read to deny to Mr. Boydstun the right to revoke the entire trust after decedent's death. In our view, an analysis of the Pope case supports a position contra to that taken by petitioner. The provision involved in that case was "Donor * * * expressly reserved the right, privilege and power of revoking * * * at any time * * * but subject to the written consent during her lifetime of Clara H. Pope." An amendment stated: "Subject to the written consent during her lifetime of the said Clara H. Pope, the Donor * * * expressly reserves the right, privilege and power to revoke this trust. *381 " Pope v. United States,supra at 20. As was pointed out in that case, under California law the donor had the right to revoke during his lifetime because of being the trustor of the trust. The problem was to interpret what was meant by the provision "Subject to the written consent during her lifetime of said Clara H. Pope, the Donor * * * expressly reserves the right" to revoke the trust. The court stated in this regard: The "during her lifetime" proviso seems superfluous since Clara could only approve or disapprove while alive. However, the language does give meaning to the agreement in that it expressly defines the period during which decedent's power was limited or qualified. Taken alone, the only reasonable conclusion is that upon Clara's death decedent once again possessed exclusive power to revoke or amend the trust. This conclusion indicates that all Clara was bargaining for was a guaranteed life estate and medical allowance. [Pope v. United States,supra at 20.] Here, in our view, the reasonable conclusion is that except for the provision of the trust agreement permitting either Settlor to revoke during their joint lifetimes, *382 Mr. Boydstun could not have revoked the trust with respect to decedent's community property during her lifetime. His right to revoke was limited by the words "during the joint lifetimes of the Settlors." The clear meaning of this language is that Mr. Boydstun could revoke as to both his and decedent's community property only during decedent's lifetime; and under the trust agreement, if he had exercised this right, the community estate or the revoked portion "shall revert to both Settlors as their community property." If either Mr. Boydstun or decedent had revoked during their joint lives, decedent's community property would have passed to the trust under her will and would have been administered under the terms of the trust.This would have meant that her community property was placed in Trust A. It appears to us that under decedent's will, as well as under the trust agreement, it was decedent's intent that her community property be placed in Trust A and since there was no provision for revocation of this trust after her death, that it be irrevocable after she died. This interpretation is also supported by the provisions for invasion in accordance with ascertainable standards contained *383 in the trust agreement. [6]
The case Proctor v. Woodhouse,127 Vt. 148, 241 A.2d 785, 787 (1968), relied on by petitioner is clearly distinguishable from the instant case. The instrument involved in the Proctor case specifically granted to the surviving spouse a right to revoke or amend the trust involved. It provided that "The donors and the survivor of them" retain the right to revoke the trust "by notice in writing signed by them, or by the survivor in case of the death of either of them * * *." The court held this language to clearly provide for revocation of the trust by the survivor in case of the death of one of the donors. In fact this case holds that the interest of the donors is to be determined from the provisions of the trust agreement. In our view, there is no right of revocation of Trust A granted in the trust instrument to Mr. Boydstun after decedent's death, and no implied right of revocation for anyone who is not the trustor exists under the California statute. Cf. Wells Fargo Bank American Trust Co. v. Greuner,226 Cal.App.2d 454, 38 Cal. Rptr. 132 (1964); *384 Hibernia Bank v. Wells Fargo Bank Nat. Assn.,66 Cal.App.3d 399, 136 Cal. Rptr. 60, (1977). Here, the trust had two "Trustors" or Settlors and in our view each was the trustor as to the property he or she contributed to the trust. Section 206 of the California Probate Code provides that community property held in a revocable trust, described in section 5113.5 of the Civil Code, shall be governed by the provisions, if any, in the trust for disposition in the event of death. Section 5113.5 of the California Civil Code provides as follows: Where community property, before or after the effective date of this section, is transferred by the husband and wife to a trust, regardless of the identity of the trustee, which trust originally or as amended prior or subsequent to such transfer (a) is revocable in whole or in part during their joint lives, (b) provides that the property after transfer to the trust shall remain community property and any withdrawal therefrom shall be their community property, (c) grants the trustee during their joint lives powers no more extensive than those possessed by a husband or wife under Sections 5125 and 5127, and (d) is subject to amendment *385 or alteration during their joint lifetime upon their joint consent, the property so transferred to such trust, and the interests of the spouses in such trust, shall be community property during the continuance of the marriage, unless the trust otherwise expressly provides. Nothing in this section shall be deemed to affect community property which, before or after the effective date of this section, is transferred in a manner other than as described in this section or to a trust containing different provisions than those set forth in this section; nor shall this section be construed to prohibit the trustee from conveying any trust property, real or personal, in accordance with the provisions of the trust without the consent of the husband or wife unless the trust expressly requires the consent of one or both spouses. It is clear here that the community property transferred to the trust by decedent and Mr. Boydstun remained community property under the provision of this statute. Under California law, decedent had a right to make a testamentary disposition of her community property. The terms of the trust agreement made such a testamentary disposition by leaving to Mr. Boydstun the *386 income from decedent's community property for life, subject to invasion by ascertainable standards, and the remainder to her issue or, in the event they predeceased Mr. Boydstun, to her nieces and nephews. In our view, under the provisions of the trust agreement here involved, Mr. Boydstun does not have a power of appointment over decedent's community property placed in Trust A within the meaning of section 2056(b). Petitioner's motion for summary judgment will be denied and decision will be entered for respondent. An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect at the date of death. ↩
2. After this case was set for trial, petitioner filed a motion for summary judgment. Respondent objected to petitioner's motion, particularly to the consideration of statements contained in affidavits attached to that motion which respondent's counsel stated were factually incorrect. Because both parties represented to the Court that the testimony would be short, the case was scheduled for trial and tried without a ruling on the motion for summary judgment. In view of the fact that the case has been tried, the Court will write no separate opinion disposing of petitioner's motion for summary judgment but will consider the case on its merits.↩
3. Petitioner calls attention to the provision of section 20.2041-1(b)(1), Estate Tax Regs., which states: (b) Definition of "power of appointment"--(1) %in general.↩ The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. Similarly, a power given to a decedent to affect the beneficial enjoyment of trust property or its income by altering, amending, or revoking the trust instrument or terminating the trust is a power of appointment. * * *
4. Respondent objects to receipt or consideration of testimony with respect to decedent's intent when she signed the Declaration of Trust. In view of our conclusion with respect to this testimony, we need not consider respondent's arguments in this respect.↩
5. We of course do not have the question of Mr. Boydstun's right to revoke Trust A with respect to his one-half of the community property.Although it would appear under the provisions of the California Code that he retained this right for his lifetime, we have found no case, nor has any been called to our attention, involving this issue where there were two trustors of one trust.↩
6. Petitioner does not contend that the provision for invasion contained in the trust agreement amounts to a general power of appointment, and clearly it does not.↩